**UNITED STATES DISTRICT COURT**
**MIDDLED DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROBERT PHILLIPS,

        Plaintiff,

vs.                    Case No. 8:06-CV-1840-EAK-TBM

METROPOLITAN LIFE
INSURANCE COMPANY,

        Defendant,

_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion for Summary Judgment

(Dkt. 13) and Defendant's response (Dkt. 18); Defendant's Motion for Final Judgment

(Dkt. 17) and Plaintiff's response (Dkt. 20).

## BACKGROUND and PROCEDURAL HISTORY

Plaintiff Robert Phillips filed a complaint on October 5, 2006, requesting legal

and/or equitable relief under the Employee Retirement Income Security Act (ERISA), 29

U.S.C. 1001. (Dkt. 1). Plaintiff was employed as a Senior Technical Support Engineer

by Raytheon Company in Pinellas County, Florida and there participated in a Long Term

Disability Plan (Plan). The Plan is funded by employee contributions and administered

by the Defendant, Metropolitan Life Insurance Company (METLIFE), which serves as the Claims Administrator and is the fiduciary charged with making benefit determinations under the Plan, which the parties agree is subject to the provisions of ERISA.

Plaintiff ceased working on December 10, 2003, and filed a claim for Short Term Disability (STD) based upon a claim of a non-occupational illness or injury which prevented him from performing the essential elements of his regular job with reasonable accommodations.  METLIFE granted Plaintiff's claim and paid STD benefits through March 10, 2004, the maximum period for STD benefits under the Plan.  Plaintiff thereafter applied for long term disability (LTD) benefits, which METLIFE granted and paid from March 11, 2004 through January 15, 2006, when the Defendant discontinued payments based upon their determination that Plaintiff was no longer eligible for LTD benefits.  METLIFE based its decision on its determination that Plaintiff was capable of performing another job for which he was reasonably qualified by training, education or experience.  By letter dated June 10, 2006, counsel for Plaintiff sent a Request for Review/Appeal to METLIFE, which reviewed and considered the appeal before denying it by letter dated September 13, 2006.  Consequently, Plaintiff filed his complaint in this Court on October 5, 2006.

## **<u>STANDARD OF REVIEW</u>**

ERISA claims are reviewed according to three different standards: (1) *de novo* review applies where a plan administrator has been given no discretion in deciding claims; (2) arbitrary and capricious review applies where the plan administrator has discretion in deciding claims and does not suffer from a conflict of interest; and (3) heightened arbitrary and capricious review applies where the plan administrator has discretion but suffers from a conflict of interest. <u>Gilley v. Monsanto Company, Inc</u>, 490 F.3d 848, 856 (11th Cir. 2007); <u>HCA Health Servs. Of Ga., Inc. V. Employers Health Ins. Co.</u>, 240 F.3d 982, 993 (11th Cir. 2001). As discussed further below, the parties agree that in this matter, METLIFE has exercised discretion as the Claims Administrator under the Plan and does not suffer from a conflict since METLIFE does not fund the benefits. (Dkt. 17 at 2; Dkt. 13 at 5). Therefore, the Court agrees with the parties that this claim must be reviewed under the arbitrary and capricious standard.

Before reaching the application of the arbitrary and capricious standard, a court must first make a *de novo* determination as to whether the administrator's decision was legally "wrong". <u>Brown v. Blue Cross & Blue Shield</u>, 898 F.2d 1556, 1567 n.12 (11th Cir. 1990); <u>Godfrey v. BellSouth Telecomms., Inc.</u>, 89 F.3d 755, 758 (11th Cir. 1996). In making this initial *de novo* determination, the court limits its review to the plan documents and the administrative record. <u>Paramore v. Delta Air Lines, Inc.</u>, 129 F.3d 1446, 1451 (11th Cir. 1997); <u>Kirk v. Metropolitan Life Ins. Co.</u>, 331 F.Supp.2d 1361, 1362-63 (M.D. Fla. 2004). If a court concludes that the administrator's decision was not

3

wrong, the decision should be affirmed and no further analysis is required.  Williams v.

Bellsouth Telecomms., Inc., 373 F.3d 1132, 1138 (11th Cir. 2004); Kirk, 331 F.Supp.2d

at 1364, 1367 (M.D. Fla. 2004).

Only if a court determines that the administrator's decision was not correct, does it

continue the analysis to determine whether the decision was arbitrary and capricious.

Brown, 898 F.2d at 1567 n.12. Under the arbitrary and capricious standard of review, a

"wrong but reasonable determination may not be overturned."  Dibiccari v. The Lockheed

Martin Retirement Plan, 244 F.Supp.2d 1308, 1312 (M.D. Fla. 2002); Collins v.

American Cast Iron Pipe Co., 105 F.3d 1368, 1370 (11th Cir. 1997).  The court is

required only to review the administrative record to determine if "there was a reasonable

basis for denial."  Jordan v. Metropolitan Life Ins. Co., 205 F.Supp.2d 1302, 1306 (M.D.

Fla. 2002).  It is irrelevant that the court or anyone else might reach a different

conclusion.  Turner v. Delta Family-Care Disability and Survivorship Plan, 291 .3d 1270,

124 (11th Cir. 2002).  If there is a reasonable basis for the administrator's decision, it

must be upheld as not being arbitrary and capricious, even if there is evidence that would

support a contrary decision.  Payne v. Ryder System, Inc. Long Term Disability Plan, 173

F.R.D. 537, 542 (M.D. Fla. 1997) (quoting Jett v. Blue Cross & Blue Shield of Ala., 890

F.2d 1137, 1140 (11th Cir. 1994).


Although Plaintiff has filed a motion for Summary Judgment, ERISA claims are

4

more properly construed as a Motion for Final Judgment.  <u>Providence v. Hartford Life &</u>

<u>Accident Ins. Co.</u>, 357 F. Supp.2d 1341, 1342 n. 1 (M.D.Fla. 2005).  The Court sits in

more of an appellate capacity than as a trial court, and the Court's task is to review the

benefit decision based on the administrative record that was available to the decision-

maker.  <u>Id</u>.  Since no additional evidence is generally taken, the usual Summary Judgment

standard, whether there is a genuine issue of material fact, does not apply.  <u>Id</u>.; see also

<u>Bendixen v. Standard Ins. Co.</u>, 185 F. 3d 939. 942 (9th Cir. 1999).

## <u>DISCUSSION</u>

The parties have agreed, and the Court concurs, that METLIFE is the administrator

of the Plan, and as such is the fiduciary charged with making benefit determinations and

that there is no conflict of interest at issue.  (Dkt. 17 at 2; 13 at 5).  Therefore, the Court

here must apply the "arbitrary and capricious" standard of review.  (<u>Id</u>.)  As discussed

supra, the Court must first make a *de novo* determination as to whether the decision made

by METLIFE on this claim was correct.  <u>Brown v. Blue Cross & Blue Shield</u>, 898 F.2d

1556, 1567 n.12 (11th Cir. 1990); <u>Godfrey v. BellSouth Telecomms., Inc.</u>, 89 F.3d 755,

758 (11th Cir. 1996).

Under the Plan, a claimant is considered disabled if unable to perform the "essential

elements of [the claimant's particular] job" for an initial 15-month period, after which

Long Term Disability (LTD) benefits are payable only if the claimant is "unable to work at

any job for which [the claimant] is reasonably qualified by training, education or

experience."  The Plan further specifies that LTD benefits are not payable when a claimant

"fails to provide satisfactory and objective medical proof that he/she is disabled [and is] no

longer being treated by or...not under the continuing care of a fully licensed physician for

his/her disability."

Plaintiff, at the time employed as a Senior Technical Support Engineer by Raytheon

Company in Pinellas County, Florida filed a claim for Short Term Disability (STD) on

December 10, 2003, based upon a medical diagnosis of back pain caused by "recurrent

stenosis of the disc at L4-5 and recurrent disc herniation at L5-S1 to the right nerve root

compression."  Plaintiff underwent back surgery in February, 2004. METLIFE accepted

and paid Plaintiff's STD claim for the maximum allowable term until March 10, 2004.  On

March 11, 2004, METLIFE reviewed and approved Plaintiff's claim for the first phase of

LTD benefits.  At that time, Plaintiff complained of chronic back pain and was treated at

the Florida Spine Institute by Dr. Ashraf Hanna, a Board Certified pain management

physician.  METLIFE paid Plaintiff's claim because the administrator was satisfied that

Plaintiff was not capable of performing his specific job.  This was based upon a report by

Dr. Hanna that Plaintiff was physically capable of light duty work but was not able to

perform his normal job which involved exposure to high voltage electrical currents.

During the review process, METLIFE submitted Plaintiff's file to an independent

Physician Consultant, Dr. Philip Jordan Marion, M.D. Board Certified in physical

medicine and rehabilitation in addition to pain management.  In October, 2004, during a

telephone conference with Plaintiff's physician, Dr. Hanna advised that Plaintiff was able

to perform the routine duties of his prior assignment, but due to his use of narcotic pain

medications should not use any safety sensitive machinery or materials.  Dr. Hanna

confirmed this in a December, 2004 follow-up report for METLIFE.

In February, 2005, to better assess the effect of the pain medications on Plaintiff's

cognitive abilities, METLIFE sent Plaintiff to Alexander T. Gimon, Ph.D., a psychologist

who conducted an independent medical examination (IME).  Dr. Gimon reported to

METLIFE that Plaintiff had "high average to above average cognitive functioning" but

showed "impaired functioning in auditory memory and attention" and "had difficulties

staying focused auditorally."  Although several other METLIFE consultants questioned

the IME report, METLIFE accepted the recommendation of the psychologist that Plaintiff

should not return to his original assignment and continued to pay the LTD benefits during

this "your job" phase.

In a letter dated February 18, 2005, METLIFE advised Plaintiff that the Plan would

transition on June 10, 2005, to the second, "any job" phase and Plaintiff would need to

submit medical proof that he was unable to perform any work in order to receive continued

LTD benefits.  METLIFE was notified at about this same time that Plaintiff's claim for

Social Security disability (SSD) benefits had been denied on appeal.  The Social Security

Administration (SSA) advised METLIFE that they had determined that Plaintiff's condition was not sufficiently debilitating to keep Plaintiff from working.  (Although, as Plaintiff has pointed out, he has requested a further hearing before a SSA Administrative Law Judge to further pursue this claim.  (Dkt. 20 at 4)).

In April, 2005, Plaintiff's doctor, Dr. Hanna, faxed a handwritten note to METLIFE stating that Plaintiff was unable to work at any job.  Dr. Hanna did not at that time provide any additional, updated medical report to support this statement.  At approximately this time, however, Plaintiff underwent a functional capacity evaluation (FCE) at the Florida Spine Institute by a physical therapist, where Plaintiff was being treated by Dr. Hanna. After two METLIFE registered nurse consultants noted that the FCE was not typical of the FCEs normally seen, one of the nurses contacted the physical therapist, Ms. Raine Osborne,  to clarify the results.  Ms. Osborne advised that the Florida Spine Institute does not conduct "traditional FCEs" and confirmed that Plaintiff was capable of performing light duties over an 8-hour workday as long as he was "not frequently lifting 15 lbs or greater on a daily basis."  Ms. Osborne elaborated that Plaintiff "would be able to perform sedentary/light job duties."  Plaintiff objects to the Defendant's reliance on the verbal interview of Plaintiff's physical therapist as opposed to the opinion of his medical doctor. (Dkt. 20 at 4).  However, this follow-up concerning the FCE submitted by Plaintiff, and used now in defense of METLIFE's claim adjudication, is viewed as unremarkable by the Court as a reasonable step taken by a fiduciary.  There is nothing in the record to indicate

8

that METLIFE's adjudication depended solely or even substantially on this telephone interview.

In May, 2005, Plaintiff submitted an "Attending Physician's Statement of Functional Capacity" completed by Dr. Hanna.  This report indicated that Plaintiff had "no limitation" as to sitting, grasping/handling, finger dexterity, and repetitive movement of hands and feet.  Additionally, Dr. Hanna reported that Plaintiff was capable of climbing two flights of stairs and was capable of lifting up to 15 pounds for more than 60 percent of the workday, but had "some limitations" in balancing, bending, stooping and squatting.  Dr. Hanna nevertheless checked a box on the form indicating that Plaintiff was disabled from any job.  Ten[1] days later, Dr. Hanna completed an additional form with conflicting information.  This form indicated that Plaintiff was only able to stand, sit, and walk only one hour each per day.

As the announced June 10, 2005, date requiring Plaintiff's qualification under the "any job" requirements approached, METLIFE next submitted Plaintiff's file to an Independent Physician Consultant, Robert Heilbronner, Ph.D., Board Certified clinical neuropsychologist.  Dr. Heilbronner was critical of portions of the testing and report of Dr. Gimon, who conducted the first METLIFE IME in that Dr. Gimon's report "fail[ed] to include measures of symptom validity/effort and it also includ[ed] many outdated tests that

---

[1]The Defendant's motion describes this interval as "six days."  However the Court notes that the Administrative Record Submitted with copies of these two reports, identified as AR 0473 and AR 0474-0475 respectively, indicates that the reports were dated "05/19/05" and "05/29/05."  It appears that both reports were faxed to METLIFE on May 26, 2005.

should no longer be given....Moreover, [Dr. Gimon] inappropriately interpreted scores that were entirely within normal limits as being impaired." From a review of the medical information in Plaintiff's file, Dr. Heilbronner opined that Plaintiff had sufficient cognitive ability that would enable him to "perform other occupations." However, Dr. Heilbronner recommended that Plaintiff undergo an examination by a licensed neuropsychologist.

Prior to following the advice of Dr. Heilbronner, Defendant METLIFE offered Dr. Heilbronner's report to Dr. Hanna for comment. In response, Dr. Hanna made a handwritten note on METLIFE's request stating "Prior opinion has not changed," submitting same by fax. METLIFE followed up by requesting that Dr. Heilbronner telephonically confer with Dr. Hanna. This approximately ten minute telephone conference occurred on June 20, 2005, during which Dr. Hanna advised that Plaintiff was capable of returning to light duty work.

METLIFE next sent Plaintiff to Geoffrey Kantor, Ph.D., licensed in psychology and neurosychology, for an independent neuropsychological evaluation. On September 20, 2005, Dr. Kantor administered an extensive battery of tests over a period of eight to nine hours. Dr. Kantor also reviewed all of the prior documentation in Plaintiff's file. The following is an excerpt from the documented observations made by Dr. Kantor:

> Mr. Phillips....carried a cane, but did not use it ... when he entered the building, he put his cane in his right hand, opened a heavy glass door with his left hand, and walked in without any balance problems.... He carried a backpack in his hand ... which he stated weighed approximately 10 lbs. He was noted to reach over and pick up an item from the floor with his right hand while holding his backpack in his left hand without

any balance problem or indications of pain.  When questioned, he stated that he has problems only with 15 lbs or more.

There were no pain behaviors displayed during the course of the entire evaluation, which lasted approximately 8 to 9 hours. ... He exhibited no pain or balance problems when getting up independently from the couch without the use of his cane.

... He did not exhibit any significant processing speed impairment during the conversation, history taking, or during test administration.

There was very little fatigue noted and frequent breaks were not required ....

Dr. Kantor also noted that Plaintiff reported that he went fishing on his 21-foot boat several times per week, was able to perform household chores, outdoor work and activities away from the home.  Dr. Kantor further reported that Plaintiff had "a much higher level of engagement in social activities" than other typical chronic pain patients.  Dr. Kantor made a number of other, detailed findings but concluded that Plaintiff had the "capability to work many hours in a seated position and to utilize a computer."

After receiving no response from Plaintiff to two letters dated October 27, 2005 and November 14, 2005, reminding Plaintiff of his continuing obligation to submit updated medical documentation, METLIFE re-submitted Plaintiff's file to Dr. Heilbronner for review.  Dr. Heilbronner concurred with the findings of Dr. Kantor and concluded that there was no objective evidence that Plaintiff could not return to work in any occupation.

Finally, METLIFE requested a labor market analysis (LMA) to identify

occupations consistent with Plaintiff's physical limitations, which found that there were

several positions in both sedentary and light categories that Plaintiff could perform.

Plaintiff notes that the METLIFE-commissioned survey contacted 104 possible

employers in a 50 mile radius, only 19 responded, and none of those indicated that

Plaintiff had the necessary qualifications for their openings.  (Dkt. 13 at 10).  However,

Defendant METLIFE disputes this and points out that six of the 19 employers who

responded indicated that Plaintiff would be considered a qualified applicant, that 85 of

the 104 did not respond at all, and that the Plan required no such effort on the part of

Defendant.  (Dkt. 18 at 5-6).

METLIFE notified Plaintiff by letter dated January 23, 2006, that, after an

extensive review, they had determined that Plaintiff did not meet the Plan's "any job"

standard and was not eligible to receive LTD benefits, discontinued effective January 15,

2006.

In February, 2006, Plaintiff submitted an updated medical report from Dr.

Hanna's office, where Plaintiff had been seen by a physician assistant, Michael Hux, on

February 2, 2006.  Plaintiff's attorney then contacted METLIFE and advised that

Plaintiff would appeal METLIFE's decision at a later time with the submission of further

documentation.

On June 10, 2006, Plaintiff filed his formal appeal.  With his appeal, Plaintiff

submitted an MRI of the lumbar spine dated 5/3/05; records from Dr. Hanna' office

12

dated 10/5/05, 1/5/06, 1/6/06, 1/7/06, 2/2/06, 2/8/06 and 2/14/06; and an additional MRI

of the cervical spine 2/13/06.  METLIFE submitted the entire file for review by another

Independent Physician Consultant, Dr. Robert Petrie, Board Certified in preventive and

occupational medicine, as well as family practice.  Dr. Petrie had a telephone conference

with Dr. Hanna on July 11, 2006.  At that time, Dr. Hanna advised that he had last seen

Plaintiff on May 2, 2006, that Plaintiff's was stabilized on his medication, which did not

cause any adverse effects or interfere with Plaintiff's ability to drive.  Dr. Hanna

expressed reluctance to comment on Plaintiff's functional capabilities.  (Dkt. 17 at 9).

Plaintiff objects that Dr. Hanna also suggested that a Functional Capacity Evaluation

(FCE) would be worthwhile and that Dr. Petrie was not a "Certified Rehabilitation

Counselor" or other type of vocational rehabilitation expert.  (Dkt. 20 at 6).  Following

his conference with Dr. Hanna and review of the medical records, Dr. Petrie concluded

that Plaintiff was not precluded medically from performing sedentary to light job

activity.  Following the report of Dr. Petrie, METLIFE performed additional LMAs and

METLIFE was advised that there were sedentary and light jobs for which Plaintiff was

qualified based upon his education, training and experience.

On August 5, 2006, Plaintiff submitted a functional capacity evaluation (FCE)

conducted by a physical therapist, J. Paul Melton.  METLIFE re-submitted Plaintiff's

file to Dr. Petrie with the new FCE for additional review.  As part of the review, Dr.

Petrie had another telephone conference with Dr. Hanna on August 21, 2006 to discuss

the FCE.  Dr. Petrie particularly discussed therapist Melton's apparent observation of the

Plaintiff demonstrating an antalgic gait.  Dr. Hanna advised that he did not recall any

such gait disturbance and, further, that there was "no objective evidence of weakness or

atrophy."  Dr. Petrie also expressed concern that therapist Melton's FCE lasted only four

hours when an appropriate FCE would take most of two days.  Dr. Petrie noted other

anomalies and concluded that the "medical records and teleconference with Dr. Hanna ...

do not contain objective evidence of a change in [Plaintiff's] physical status between

1/17/06 and 8/01/06 in any way to validate the conclusions of the FCE," and that

Plaintiff would as of 1/17/06 "been able to perform sedentary/light job activities."

Finally, on September 5, 2006, METLIFE submitted Dr. Petrie's report to Dr.

Hanna and asked for comment as to whether he agreed with the conclusion of Dr. Petrie.

Dr. Hanna did not respond.  Subsequently, on September 13, 2006 advised Plaintiff that

METLIFE had completed its review of Plaintiff's appeal and was upholding its original

decision to terminate benefits.  Plaintiff filed this lawsuit on October 5, 2006.

Plaintiff asserts primarily that the decision by Defendant METLIFE to terminate

long term disability benefits in the "any job" phase was arbitrary and capricious because

METLIFE did not adequately notify Plaintiff that he was required under the plan to

provide objective medical proof and further, that METLIFE should have afforded much

more deference to the views Plaintiff's physical therapist, Paul Melton, along with Dr.

Hanna.  However, the Court finds from the record that Plaintiff should have been on

14

notice that he was required to submit objective medical evidence from the Plan

description as filed with his complaint, which specifically makes reference to required

"proof of the continuance of Full or Total Disability when required by the Claims

Administrator" (Dkt. 1 at 16) and "evidence satisfactory to the Claims Administrator"

(Id. at 24).   Additionally, the Eleventh Circuit has ruled that such objective evidence

may be required of a claimant without prior notice because otherwise a review by an

administrator of claims would be rendered essentially meaningless.  Watts v. Bellsouth

Telecomms., Inc., 218 Fed. Appx. 854, 857. (11th Cir. Feb. 22, 2007).  Without such a

requirement, an administrator would have to accept subjective claims without question

and the administrator's fiduciary role would be compromised.  Id.  Furthermore, under

applicable case law, METLIFE was not required to give any "greater deference" to the

opinions of Mr. Melton and Dr. Hanna.  Id. at 856, citing Black & Decker Disability

Plan v. Nord, 538 U.S. 822, 831 (2003).

### Conclusion

Under the standard of review applicable to this ERISA matter, this case cannot be

decided on a summary judgment standard.  However, if that were the standard, the above

review of the factual record demonstrates clearly that the Plaintiff has not met his burden

to prove that there are not material issues of fact in dispute and that he should prevail on

the merits.

The Court agrees with the parties that METLIFE has exercised discretion as the

Claims Administrator under the Plan and does not suffer from a conflict since METLIFE does not fund the benefits. (Dkt. 17 at 2; Dkt. 13 at 5).  Therefore, the Court agrees with the parties that, under ERISA and the applicable case law, the decisions of METLIFE concerning the Plaintiff's LTD benefits must be decided under the arbitrary and capricious standard.  Gilley v. Monsanto Company, Inc, 490 F.3d 848, 856 (11th Cir. 2007); HCA Health Servs. Of Ga., Inc. V. Employers Health Ins. Co., 240 F.3d 982, 993 (11th Cir. 2001).

However, before reaching the application of the arbitrary and capricious standard, this Court must first make a *de novo* determination as to whether METLIFE's decision was legally "wrong".  Brown v. Blue Cross & Blue Shield, 898 F.2d 1556, 1567 n.12 (11th Cir. 1990); Godfrey v. BellSouth Telecomms., Inc., 89 F.3d 755, 758 (11th Cir. 1996).  In making this initial *de novo* determination, the Court's review is limited to the plan documents and the administrative record.  Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1451 (11th Cir. 1997); Kirk v. Metropolitan Life Ins. Co., 331 F.Supp.2d 1361, 1362-63 (M.D. Fla. 2004).

Based upon a careful review of the Plan and the administrative record in this case, the Court has determined by a preponderance of the evidence that METLIFE made a correct decision in the denial of the Plan's "any job" LTD benefits to the Plaintiff. If this Court concludes that METLIFE's decision was not wrong, the decision should be affirmed and no further analysis is required.  Williams v. Bellsouth Telecomms., Inc.,

16

373 F.3d 1132, 1138 (11th Cir. 2004); <u>Kirk</u>, 331 F.Supp.2d at 1364, 1367 (M.D. Fla. 2004).  Having found that METLIFE's decision on this claim was reasonable, the Court also finds that METLIFE's denial of further disability payments to Mr. Phillips was neither arbitrary nor capricious.  Accordingly, it is

     **ORDERED** that Plaintiff Robert Phillips' Motion for Summary Judgment (Dkt. 13) be **DENIED**; that Defendant METLIFE's Motion for Final Judgment (Dkt. 17) be **GRANTED**; and the Clerk of Court is **DIRECTED** to enter judgment for the Defendant and close the case.

     **DONE AND ORDERED** in Chambers at Tampa, Florida, this 31st day of March, 2008.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record